UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**DAWN L. HUNTLEY**

v.  C.A. No. 10-201 ML

**STATE OF RHODE ISLAND, et al.**

## MOTION TO DISMISS

Now come Defendants and, pursuant to Rule 12 of the Federal Rules of Civil Procedure, moves this Court for dismissal of the instant Complaint. A Memorandum in support hereof is attached.

    Respectfully submitted,

    DEFENDANTS,
    By Their Attorney,

    */s/ Rebecca Tedford Partington*
    _____
    Rebecca Tedford Partington, #3890
    Assistant Attorney General
    150 South Main Street
    Providence, RI  02903
    (401) 274-4400
    Fax:  (401) 222-2995

CERTIFICATION OF SERVICE

I hereby certify that I filed the within Motion to Dismiss with the ECF Filing System and that the document is available for viewing and downloading. I also have caused a copy to be sent by first class mail, postage prepaid on this 14th day of September, 2010 to:

**Dawn L. Huntley**
32 Sabra Street
Cranston, RI 02910

    */s/ Rebecca Tedford Partington*
    _____

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

**DAWN L. HUNTLEY**

    **v.**                                                  **C.A. No. 10-201 ML**

**STATE OF RHODE ISLAND, et al.**

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Plaintiff Dawn Huntley, formerly a Special Assistant Attorney General, has filed a complaint against Defendants State of Rhode Island through its Department of Attorney General, and Patrick C. Lynch. These defendants have in turn moved this Court for dismissal. For the reasons set forth below, dismissal is appropriate in this case. A most generous reading of the Amended Complaint[1] presumes that Huntley intends to plead federal causes of action under 42 U.S.C. 1983 and 2000e (Amended Complaint, paragraphs 1, 5, 8, 10). There are also references to state law claims of breach of contract, defamation, and intentional infliction of emotional distress. All claims have as their foundation Huntley's employment and 2008 termination from employment with the Department of Attorney General.

The United States Supreme Court has recently clarified the level of specificity necessary for a Complaint to survive a Motion to Dismiss. In *Ashcroft v. Iqbal*, ___U.S.___, 129 S.Ct. 1937 (2009), the Court reaffirmed its earlier decision in *Bell Atlantic Corp. v. Twombley,* 550 U.S. 544 (2006), discussed *infra:*

> …the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a

---

[1] Huntley filed her original Complaint on April 30, 2010, naming sixteen defendants. This document was never served on any Defendant. The Amended Complaint was filed with the Court on August 26, 2010 and one copy was served on "Patrick Lynch/Attorney General" on that same day.

> complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."

129 S.Ct. at 1949 (citations omitted).

In deciding the instant Motion, this Court should review Huntley's Amended Complaint to determine whether it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* The Supreme Court explained that a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Continuing, the Court explained that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Allegations in a Complaint cannot be "merely consistent with" liability. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

*Ashcroft* held that the complaint there under review failed to satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure, since they were naked assertions, not entitled to the assumption of truth. Likewise, in this case, Huntley offers only her beliefs, with no foundation to support them. Under even the most charitable interpretation, her Amended Complaint simply fails to plausibly establish any cause of action against any Defendant.

## ARGUMENT

### I. Huntley Has No Legally Cognizable Claim Based On Title VII

**A. Huntley Is Not An "Employee" Pursuant To Title VII**

In her Complaint, Huntley mentions the Civil Rights Act of 1964—presumably a reference to 42 U.S.C. 2000(e), commonly referred to as "Title VII." That Act's substantive provisions provide:

**(a) Employer Practices**

It shall be an unlawful employment practice for an employer—

**(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
**(2)** to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. 2000(e)-2.

Huntley's position—that of Special Assistant Attorney General—is exempt from the provisions of Title VII by the "personal staff" exemption found in the statute:

> The term 'employee' means an individual employed by an employer, except that the term 'employee; shall not include any person elected to public office in any State …by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision.

42 U.S.C. 2000e(f).

The Attorney General is a duly elected constitutional officer of the State of Rhode Island, and thus a "person elected to public office" within the meaning of 42 U.S.C. § 2000e(f). *See*, Article IV, section 1; Article IX, section 11, Rhode Island Constitution. Clearly, the attorneys deligated the statutory responsibilities of that office are likewise "person(s) chosen by such officer to be on such officer's personal staff." 42 U.S.C. 2000e(f)

The statutory framework for the Department of Attorney General is found in Chapter 9, Title 42 of the Rhode Island General Laws. The first section provides:

> **42-9-1.  Head of Department—Assistants.—**(a)  There shall be a department of the attorney general.  The head of the department shall be the attorney general who shall have supervision over the department and shall appoint thirty (30) assistant attorneys general.
> (b)     The assistant attorneys general shall have powers and duties similar to those imposed upon the attorney general by law and shall be performed under and by the advice and direction of the attorney general. The attorney general shall appoint such special assistant attorneys general as may from time to time be necessary and as shall be authorized by annual appropriation or otherwise provided for in the annual budget adopted by the general assembly, whose powers and duties shall be designated pursuant to §42-9-2.

The next section provides, in part:

> **42-9-2.  Powers and duties of department—Division of juvenile prosecution established.—**(a) The attorney general, the assistant attorneys general, and those special assistant attorneys general who have been designated by the attorney general, shall exercise the powers and duties prescribed in and shall enforce the provisions of this chapter and of ss12-1-4—12-1-12, and in all other provisions of the general laws and public laws insofar as they relate to the powers and duties of the attorney general.

The duties and responsibilities placed on the Attorney General are performed by the attorneys and support staff of the Department:

> **42-9-3.  Attendance at general assembly and courts—Information on criminal matters.—**  The attorney general shall give his or her attendance at the general assembly, and at the supreme and superior courts, for the service thereof; and shall give unto those courts due advice and information concerning any criminal matters, breaches of the peace, or wrong done to the state or any of the citizens thereof, that shall come to his or her knowledge.
>
> **42-9-4.  Prosecution of offenses.—**(a) The attorney general shall draw and present all informations and indictments, or other legal or equitable process, against any offenders, as by law required, and diligently, by a due course of law or equity, prosecute them to final judgment and execution.

Finally, section 42-9-5 gives the attorney general authority to handle "those other or legal or equitable processes, and …other duties which are or may be required of him or her by law…."

These legal functions are delegated to staff attorneys, who stand in the stead of the office holder.

4

The inescapable conclusion that Huntley was a member of the Attorney General's "personal staff" is compelled by the fact that Rhode Island is an "at-will" employment jurisdiction. *Rotondo v. Seaboard Foundry, Inc.,* 440 A.2d 751 (R.I. 1981); *Ventetuolo v. Burke,* 596 F.2d 476 (1st Cir. 1979). This concept is strengthened as to staff attorneys within the Department, who serve "during the pleasure of the attorney general." R.I. Gen. Laws §42-9-9. Staff of the Attorney General do not fall within the classified service of the State of Rhode Island, pursuant to R.I. Gen. Laws §42-9-11.

Applying these statutory and common-law concepts, it becomes clear that Huntley's claim under Title VII must fail, under the "personal staff" exception. Federal courts are unanimous in holding that "at-will" government attorneys on the staff of elected officials are not covered by Title VII's provisions. *See, Wall v. Coleman,* 393 F.Supp. 826 (S.D. Ga. 1975)(dismissing Complaint on the basis that an Assistant District Attorney is a member of the personal staff of the publicly elected district attorney, not in a position of employment subject to the 1964 Civil Rights Act, 42 U.S.C. 2000e); *Ramirez v. San Mateo County District Attorney's Office,* 639 F.2d 509 (9th Cir. 1981)(same); *Teneyuca v. Bexar County,* 767 F.2d 148 (5th Cir. 2985)(same); 895 F.2d 560 (9th Cir. 1990)(same, with regard to allegations brought under Age Discrimination in Employment Act); *Monce v. City of San Diego,* 895 F.2d 560 (9th Cir. 1990)(same—even though no "immediate, personal relationship" was shown); *EEOC v. Reno*, 626 F.Supp. 419 (S.D. Fla. 1984)(same).

One of the most frequently cited cases on this point is *Wall v. Coleman*, *supra.* There, the court dismissed a complaint on the basis that an assistant district attorney fell outside of the scope of Title VII. In reaching this conclusion, the Court noted that the attorneys serve as the face of the DA while carrying out the responsibilities of that office, and that the DA is judged by

5

the electorate based in large part on the actions (or inactions) of the staff attorneys. The court then endeavored to determine what the word "staff" meant in Title VII's exemption:

> The term staff in its broadest sense, i.e., 'A body of assistants serving to carry into effect the plans of a superintendent or manager…' would include everyone employed in the office of a district attorney—assistant district attorneys, secretaries, file clerks, investigators, and other. In its narrowest sense, i.e., 'The aides-de-camp of a general officer' the term would include at least the assistant district attorneys, the persons who can do all that the district attorney himself can do. That the assistants appointed by [the] District Attorney…do what he delegates to them, serve at his pleasure and work as his assistants instead of working as assistants for [other governmental entities] further demonstrates that their position as an assistant is 'of or pertaining to a particular person'—[the DA]. They each represent him in everything they do as an assistant district attorney. A more personal relationship would be hard to create.

393 F.Supp. at 831.

Since Huntley was appointed by an elected official, was subject to serving "at the pleasure of" the Attorney General, prosecuted sensitive, confidential matters, and was not a member of Rhode Island's classified service, she does not fall within the provisions of Title VII. All claims that may have been brought under that section should therefore be dismissed.

### B. Huntley Has Failed To Adequately Allege Discrimination Because Of Her Gender, Age, or Race

If the Court wishes to examine Huntley's Title VII Complaints in more detail–it will find that they do not state a claim against any Defendant. The meat of Huntley's Amended Complaint is found on the second page, paragraph 2:

> During her employment, the Plaintiff was denied fair and equal compensation, equal access to promotions and equal opportunities for growth. The Plaintiff was treated differently than co-workers who are not members of a protected class. On one occasion Plaintiff was denied a raise because a co-worker not in a protected class was believed to need the raise because he had a child and one on the way.

6

There are no more specific allegations. The most specific are based on parenthood, not race, gender or age, and thus not actionable. *Foster v. Dalton*, 71 F.3d 52 (1st Cir. 1995). To establish a *prima facie* case of discrimination based on a failure to promote, a Plaintiff must demonstrate that: "(1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied." E.g. *Nguyen v. City of Cleveland,* 229 F.3d 559, 562-63 (6th Cir. 2000). Although Plaintiff need not establish her *prima facie* case in her complaint, she may not rely on conclusory allegations, but must allege sufficient facts in her complaint from which the Court could infer that she was denied a promotion because of her class status. *Jordan v. Alternative Resources Corp.,* 458 F.3d 332 (4th Cir. 2006) ("[L]egal conclusions are not talismanic because it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage.") (internal quotation omitted). Huntley's complaint should be dismissed because it alleges no fact from which the Court could infer that her protected status was the reason Defendants took—or did not take—action.

### C. Title VII Does Not Apply To Claims of Age Discrimination

Although Huntley mentions age in her complaint, she did not plead any cause of action based on the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. That legislative provision is the sole and exclusive remedy for claims of discrimination based on age, and Huntley's allegations powered by section 1983 and Title VII related to age must be dismissed. Numerous courts have specifically held the ADEA to be the exclusive federal remedy for age discrimination claims. *Pattison v. Town of South Hadley,* 1993 WL 343675 (D.Mass 1993),

7

citing *Britt v. Grocers Supply Co.,* 978 F.l2d 1441, 1448 (5th Cir. 1992); *Zombro v. Baltimore City Police Dep't,* 868 F.2d 1364, 1369 (4th Cir.), *cert. denied,* 493 U.S. 850 (1989); *Ray v. Nimmo,* 704 F.2d 1480, 1485 (11th Cir. 1983); *White v. Frank,* 718 F.Supp. 592, 595 (W.D. Tex. 1989), *aff'd*, 895 F.2d 243 (5th Cir. 1990), *cert. Denied,* 498 U.S. 890 (1990); *Siaca Martinez v. Aponte Roque,* 1989 WL 61922 (D.P.R. May 31, 1989). The ADEA and its amendments provide a comprehensive statutory remedy that may not be bypassed through the means of an action under 42 U.S.C. §1983. *Humphrey v. Nebraska Public Power District,* 503 N.W. 2d 211 (Neb. 1993) and cases cited therein; *Izquierdo Prieto v. Mercado Rosa,* 894 F.2d 467 (1st Cir. 1990). Since Huntley has not even mentioned the ADEA in the Amended Complaint, her claims for age based discrimination cannot survive and should therefore be dismissed.

**II.     Huntley Has Failed To Allege A Cognizable Claim Pursuant to 42 U.S.C. 1983**

    **A.  Official Defendants Are Not "Persons"**

42 U.S.C. § 1983 provides in pertinent part "every person who" deprives another of their Constitutional rights will be liable in a civil action. In *Will v. Michigan Department of State Police,* 491 U.S. 58 (1989), the plaintiff sued the Department of State Police and its Director in his official capacity for failing to promote him. The Supreme Court held that a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself. *Id.* at 71. "We hold that neither a State nor its officials acting in their official capacities are 'persons' under §1983." *Id.* Except to the extent that Huntley seeks prospective injunctive relief (not requested), all claims are barred against the State, the Department of Attorney General, and against Patrick Lynch in his official capacity. *Quern v. Jordan*, 440 U.S. 332 (1979)(holding that

Section 1983 claims against states are not permitted absent the state's consent); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984).

### B. Huntley Has Failed To Articulate A Constitutional Violation

42 U.S.C. 1983 is simply a vehicle to bring constitutional violations before this Court. It is not a "stand-alone" cause of action. *Nieves v. McSweeney,* 73 F.Supp. 2d 98 (D.Mass. 1999). Huntley has failed to articulate which constitutional provision(s) maybe implicated in her Amended Complaint. The Defendants are forced to guess, and cannot answer the Complaint, press applicable affirmative defenses, or engage in meaningful and pointed discovery. She has thus failed to state a legally cognizable section 1983 claim against any individual Defendant, and that portion of her Complaint should be dismissed.

### III.  This Court Should Decline To Entertain, Or Dismiss The State Law Claims

#### A. Workers' Compensation Is The Exclusive Remedy For The Tort Of Intentional Infliction Of Emotional Distress

Under a heading entitled "Legal Claims", Huntley states that "Defendant willfully caused emotional distress and harm to the Plaintiff." This Court has previously recognized that "the Rhode Island Workers' Compensation Act provides the sole avenue of redress for employees who have suffered intentional infliction of emotional distress as a result of workplace sexual harassment *and other discrimination.*" *Iacampo v. Hasbro, Inc.* 929 F.Supp. 562 (D.R.I. 1996). *See also, Coakley v. Aetna Bridge co.,* 572 A.2d 295 (R.I. 1990)(finding no intentional tort exception to the exclusivity of the Workers' Compensation remedy). This claim should therefore be dismissed.

### B. Huntley's Defamation Claims Are Barred By The Applicable Statute Of Limitations

Huntley claims that her wrongful discharge caused her standing in the community to be diminished, and alleges defamation. This cause of action is time-barred by the express provisions of R.I. Gen. Laws 9-1-14, which provides that "actions for words spoken shall be commenced and sued within one year next after the words spoken, **and not after."** (Emphasis supplied). This express admonition by the General Assembly makes it clear that this limitations period is to be strictly construed. The limitations period for filing this claim expired on July 7, 2009, one year after her termination date. This state law claim should be dismissed.

### C. Huntley Failed To Articulate A Breach Of Contract Claim Against The Defendants, Who Are Immune From Such Action

While Defendants recognize that this Court is to liberally interpret the contents of a Complaint in deciding a motion to dismiss, Huntley's contractual claim simply cannot survive.[2] The entire claim reads "Breach of Contract." Not only does she fail to state a cause of action, she fails to pen a complete sentence. The most minimal claim must outline the existence of a contract, along with an assertion that the elements of a contract exist. *See, Smith v. Boyd,* 663 A. 2d 131 (R.I. 1989). The complaint must contain some allegation that the plaintiff actually performed her obligation under the contract. 2A James W. Moore et al., Moore's Federal Practice ¶8.17[7] (2d ed. 1992). Again, these Defendants are forced to speculate about the meaning of these three words.

Rule 8(a) of the Federal Rules of Civil Procedure mandates that a complaint must contain a short and plain statement of the grounds upon which the court's jurisdiction depends, a short and plain statement showing that the pleader is entitled to relief, and a demand for judgment for the relief the pleader seeks to obtain. Defendants are entitled to "fair notice of what the … claim

---

[2] This argument applies with equal force to Huntley's brief "Retaliation" claim.

is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41 (1957). Defendants cannot force detailed factual allegations, but are entitled to the "grounds" of Huntley's "entitle[ment] to relief"—which requires more than labels and conclusions. A formulaic recitation of the elements of a cause of action will not do. *Papasan v. Allain,* 478 U.S. 265, 286 (1986). Factual allegations must be enough to raise a right to relief above the speculative level. Rule 8 (a)(2) "still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Bell Atlantic Corp. v. Twombley,* 550 U.S. 544, fn. 3 (2006). In a contractual claim, Defendants suggest that the Supreme Court's language in *Bell* applies here: Rule 8 "requires a complaint with enough factual matter (taken as true) to suggest than an agreement was made….[and] calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [an] agreement." *Id.* at 556. The purpose of the minimum standard of Rule 8 is to give fair notice to the defendants of the claim being asserted, sufficient to prepare a responsive answer, and to prepare an adequate defense, among other things. *Brown v. Califano,* 75 F.R.D. 497, 498 (D.D.C. 1977). Huntley's statement "breach of contract", as well as her sparse accusations of retaliation, do not provide these Defendants with fair notice of her allegations. Without more, discovery would be shots at a moving target. These allegations should be dismissed for failure to state a legally cognizable claim.

Further, the State has not waived its immunity from suit in contract actions. The applicable legal standard is that "the Legislature is presumed not to have relinquished any part of the State's sovereign power unless the intent to do so is 'clearly expressed or arises by necessary implication from the statutory language.'" *International Depository, Inc., v. State of R. I.,* 603

A.2d 1119, 1122 (R.I. 1992) (*citing Andrade v. State,* 448 A.2d 1293, 1295 (R.I. 1982)). "A sovereign is exempt from suit not because of any formal conception or obsolete theory, but on the logical and practical grounds that there can be no legal right as against the authority that makes a law on which the right depends." *Pellegrino v. Rhode Island Ethics Commission,* 788 A.2d 1119, 1123 (R.I. 2002) (*quoting* Kawananakoa v. Polyblank, 205 U.S. 349 (1907) (Holmes, J.)).

"Under the common law, the State has sovereign immunity that may only be waived if such waiver is deliberate." *Mulvaney v. Napolitano*, 671 A.2d 312 (R.I. 1995). The Court must "presume that the legislature did not intend to deprive the State of any sovereign power unless the intent to do so is clearly expressed or arises by necessary implication from the statutory language*." Id.* (*citing Andrade, supra). Mulvaney*, like the several cases that preceded it, dealt with statutes that award interest on judgments. The strict construction of laws awarding interest on judgments against the State is also necessary where a party claims entitlement to damages against the State.

State courts most recently visited the waiver of sovereign immunity issue in a January 22, 2009, decision arising from *State of Rhode Island v. Lead Industries Association, et al.*, PB 99-5226. The Court recognized the doctrine of sovereign immunity serves an important purpose:

> …the doctrine of sovereign is embedded in the ideal of protecting the efficient running of government by removing the threat of litigation. See Afzall v. Virginia, 639 S.E. 2d 279, 282 (Va. 2007) ("The doctrine of sovereign immunity serves a multitude of purposes… providing for smooth operation of government, eliminating public inconvenience and danger that might spring from officials being fearful to act, assuring that citizens will be willing to take public jobs, and preventing citizens from improperly influencing the conduct of government affairs through the threat or use of vexatious litigation."); *see also* Catone v. Medberry, 555 A.2d 328, 333 (R.I. 1989) ( "The primary purpose of the public duty doctrine is to encourage the effective administration of governmental operations by removing the threat of  potential litigation."); Calhoun v.

> <u>City of Providence</u>, 390 A.2d 350, 355 (R.I. 1978)(Discussion of sovereign immunity and recognition of the prudence in allowing government officials to perform certain duties free from the threat of potential litigation.").

Yet the Court differentiated between the State as a party defendant (the instant case) and the State as a plaintiff (the lead paint case). When, as here, the State is an unwilling participant in litigation, then: "Under those circumstances, case law dictates that the Legislature's intent to waive sovereign immunity must be unequivocal, and the language of the statute must be meticulously analyzed in order to determine the scope of such waiver. *Id.* at p.11 (*citing Mulvaney, 671 A 2d. at 312, Andrade, 448 A.2d at 1294 and L.A. Ray Realty,* 698 A.2d 202, 209 (R.I. 1997)). The State has not consented to be sued for "breach of contract" no matter how artfully pled. Any claim based on a contractual theory cannot survive.

## CONCLUSION

Huntley has failed to plead any legally cognizable action against any of these three Defendants. For the foregoing reasons, they request that the Amended Complaint be dismissed.

Respectfully submitted,

DEFENDANTS,
By Their Attorney,

*/s/ Rebecca Tedford Partington*
_____
Rebecca Tedford Partington, #3890
Assistant Attorney General
150 South Main Street
Providence, RI   02903
(401) 274-4400
Fax:  (401) 222-2995

## CERTIFICATION OF SERVICE

      I hereby certify that I filed the within Motion to Dismiss and Memorandum with the ECF Filing System and that the document is available for viewing and downloading. I also have caused a copy to be sent by first class mail, postage prepaid on this 14th day of September, 2010 to:

**Dawn L. Huntley**
32 Sabra Street
Cranston, RI 02910

                                                  */s/ Rebecca Tedford Partington*